September 25, 2026

**VIA ECF**
The Honorable Annalisa Torres
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

**Re: *VGB Limited v. Bolivarian Republic of Venezuela*, No. 1:23-cv-09933-AT**

Dear Judge Torres:

Pursuant to Fed. R. Civ. P. 26(b)(1), Local Civil Rule 37.2, and Your Honor's Rule II.D., the parties submit this joint letter setting forth their respective positions on discovery disputes raised by defendant the Bolivarian Republic of Venezuela (the "Republic") concerning Plaintiff VGB Limited's ("VGB") document production. The parties exchanged correspondence on August 6, 18, September 2 and 4, and the below-signed counsel conferred for roughly an hour via Zoom on each of September 8 and 14, 2026. While counsel narrowed the issues, disputes remain.

**REPUBLIC'S POSITION**: VGB seeks approximately $500 million based on alleged beneficial ownership of multiple series of Republic bonds (the "Bonds") for which it claims defaults. The discovery in dispute addresses threshold issues, including: (1) whether VGB is a sham vehicle for investors to evade U.S. Office of Foreign Assets Control ("OFAC") sanctions that restrict Republic bond transactions; and (2) whether VGB acted with champertous purposes violative of New York Judiciary Law § 489(1). The magnitude of the alleged damages refutes any argument that the Republic's focused discovery is unduly burdensome or disproportionate. Only recently produced (and incomplete) discovery reveals that VGB acquired more than 75% of its Republic Bonds through in-kind contributions—mostly from its parent fund ("Canaima"), which itself obtained most of its bonds from a small group of investors who contributed them in exchange for fund ownership. In other words, the persons who held these Bonds exchanged them for interests in the vehicle now suing on them, retaining the economic benefit of the same instruments.

**OFAC Sanctions Issues**. During the period most relevant here, General License 3H (effective May 12, 2020) ("GL3H") did not authorize U.S. Persons to directly or indirectly purchase or invest in, or facilitate the purchase of or investment by U.S. Persons in, the Republic's GL3H bonds.[1] OFAC separately maintains the SDN List, which identifies persons who are sanctioned. VGB's structure enables investors to transfer Republic Bonds to ostensibly non-U.S. entities—Canaima in Guernsey, which transfers them to VGB in the BVI—while retaining ownership in the same bonds via shares in Canaima. In a U.K. proceeding, it was found that a similarly structured Canaima fund was a vehicle to pool together Venezuelan debt holders to pursue claims under a single umbrella. *lliquidx Ltd. v. Altana Wealth*, [2026] EWCA Civ 874, [12]-[15], [22]-[24].[2]

---

[1] U.S. Dep't of the Treasury, OFAC, Venezuela Sanctions Regulations General License No. 3H, Authorizing Transactions Related to, Provision of Financing for, and Other Dealings in Certain Bonds (May 12, 2020).
[2] https://8newsquare.co.uk/wp-content/uploads/Illiquidx-v-Altana-Wealth-Ors.pdf

Further, VGB and Canaima appear to be managed at least in part from the United States by JTC (formally a Guernsey entity, but whose Latin American business is managed out of Miami). VGB's recent production also indicates that Canaima's capital is in U.S. dollars, which are subject to OFAC sanctions jurisdiction even where the counterparties were non-U.S. Persons. Additional issues may arise if VGB used U.S.-based litigation funders or U.S.-based counsel holding interests in proceeds derived from Republic bonds.

VGB resists OFAC-related discovery with red herring arguments and unsupported say-so. It points to Canaima fund documents that purport to exclude U.S. Person investors "on paper," but the documents only reference the U.S. Person definition of Regulation S under the Securities Act of 1933. OFAC's definition is far broader, reaching "any person in the United States" regardless of citizenship or residence. 31 C.F.R. § 591.312. VGB now posits that its administrator screened investors against multiple lists daily, but it has not produced any documents or evidentiary corroboration. Equally concerning, VGB has produced nothing to show whether its investors are on the SDN List or whether its investors purchased the bonds that they contributed into VGB/Canaima in violation of U.S. sanctions laws and regulations. VGB's unsupported, conclusory claim that it did not *knowingly* permit sanctions violations sidesteps the dispositive question—whether it is attempting to enforce on bonds that it purchased through or is holding in violation of U.S. law.

VGB broadly objects to the Republic's discovery requests relating to OFAC compliance issues, but those issues are critical because they will determine whether VGB is attempting to enforce bonds it acquired and is holding by violating U.S. law.[3] Likewise, the Republic is entitled to ascertain (1) the identity and nationality of investors (according to opposing counsel, a rather small group); (2) whether and how Canaima/VGB conducted due diligence to determine their nationality and SDN List status; (3) whether the VGB/Canaima investors (its ultimate owners) held the bonds they contributed into VGB/Canaima in violation of U.S. sanctions laws and regulations; (4) the timing, amount, and terms of each purchase or contribution, including whether the consideration was paid in U.S. dollars and cleared through U.S. financial institutions.

VGB offers to provide anonymized investor identifiers and high-level summaries instead. But anonymization is precisely what prevents the Republic from determining whether the investors were permitted to transact in the Bonds, including whether any appears on the SDN List. VGB's invocation of vague, unsupported claims of "personal-security risks" cannot justify withholding core discovery in a case where half a billion dollars in damages is claimed, particularly since any purported concern is addressed by the Republic's agreement to treat the information as attorneys'-eyes-only (subject to further Court order). To the extent VGB claims documents reside with its investors, that relates to the issue of possession, custody, or control, not discoverability—and further underscores why the Republic needs the investors' identities to seek information directly.[4]

[3] *See* Requests Nos. 4 (the bonds), 5 (acquisition payments and accounts), 10 (all acquisition documents), 11 (standing), and 12 (fund organization and governance).

[4] Independent of the OFAC regulations, Republic Bonds are governed by Fiscal Agency Agreements ("FAAs") that condition a valid transfer on the advance delivery of written certifications, registrations, and instructions. ECF 38-3 (2001 FAA) § 6. VGB has produced no discovery showing that it, Canaima, or their investors satisfied the predicate transfer requirements. VGB's *Chickpen* citation addressed contractual standing to sue, not whether the underlying transfers were valid; the Cede & Co. authorizations VGB produced say nothing about the FAAs' transfer requirements.

**<u>Champerty Issues</u>.** Section 489(1) bars acquiring a claim with the intent and primary purpose of bringing suit on it. *Justinian Capital SPC v. WestLB AG*, 28 N.Y.3d 160, 166–67 (2016). The Section 489(2) safe harbor (the "Safe Harbor") protects only "*such*…purchase" having "an aggregate purchase price of at least five hundred thousand dollars," N.Y. Jud. Law § 489(2) (emphasis added), and requires actual payment or a binding, bona fide obligation to pay. *Justinian*, 28 N.Y.3d at 169–71. "Such purchase" means a single transaction or a set of related transactions, not a portfolio assembled over time from different investors, Bond series, and acquisition dates. Yet VGB asks the Court to aggregate exactly that: cash purchases, in-kind contributions, and intra-fund transfers across multiple investors, series, and dates, each of which may reflect a different acquisition purchase. The Safe Harbor does not permit investors to escape Section 489(1) by pooling distinct holdings through an intermediary in which they retain economic interests.

Accordingly, the Republic is entitled to probe whether one or more of the Bond transactions through which VGB obtained its holdings involved champertous intent and whether any transactions are even properly grouped together to qualify for Safe Harbor treatment. Courts recognize it is a "fact intensive analysis." *Zahn v. Bolivarian Republic of Venezuela*, 2026 WL 2185589, at *7 (S.D.N.Y. Jul. 29, 2026). VGB broadly objects to the Republic's discovery requests relating to champerty by pointing to carefully curated offering materials, quarterly reports, and investor newsletters—documents prepared for broad dissemination. However, the Republic seeks contemporaneous communications among VGB, its managers, investors, counsel, and actual/potential litigation funders focused on whether litigation motivated any acquisition.[5] While VGB provided cherry-picked materials mentioning restructuring and other recovery alternatives, they do not evidence why each of *the* Bonds was acquired *when* they were. Rather, communications among relevant actors are needed to reveal whether litigation was the primary purpose for any of the Bond acquisitions and whether particular contributions were solicited in anticipation of suit. While VGB argues an unconsummated tolling agreement raised years after Bond acquisitions (which is the time to test purpose) undercuts champertous intent, an interest in pursuing settlement after litigation begins is far afield: virtually all litigants explore settlement.

The only purported burden VGB asserts is the volume of a three-year email review. VGB now claims the number at fewer than fifty investors (a contention without backup)—a review of that scale is manageable, particularly given the stakes. Nor does VGB have a basis for withholding a privilege log covering privileged investor communications, which would at least disclose the timing of privileged and work product communications (including whether they were made in anticipation of litigation). Lastly, VGB seeks to limit discovery by arguing that the Republic raised a single affirmative defense regarding champerty. However, the issues relating to OFAC and FAA compliance relate directly to the subject matter of VGB's case as pled.[6]

---

2022 WL 1684275, at *3 (S.D.N.Y. May 26, 2022). Documents concerning the transfer mechanics underlying the chain of ownership are properly discoverable. *See* Requests Nos. 1–3 ("All Documents and Communications related to the 2001 FAA"), 4 ("All Documents and Communications related to the Bonds"), and 10 (all documents related to the bond acquisitions).

[5] *See* Requests Nos. 6 (documents related to the decision to acquire the bonds), 7 (investment objectives and strategy), 8 (due diligence regarding the acquisition), 9 (communications with financial advisors), 10 (documents related to the acquisition), and 14 ( "All Documents and Communications with third parties . . . regarding . . . this Lawsuit").

[6] VGB relies on readily distinguishable caselaw. Although *Segan v. Dreyfus Corp.*, 513 F.2d 695 (2d Cir. 1975) is cited to argue against discovery for unpled affirmative defenses, the decision does not even mention affirmative defenses; in any event, the Republic seeks discovery tied to VGB's own allegations, including proof of valid ownership

**VGB'S POSITION:** This is an action to recover amounts due on eight series of defaulted sovereign bonds (the "Bonds"). The Republic has been in default since 2017, and its nonpayment is not meaningfully disputed. VGB, a BVI corporation, is the beneficial owner of the Bonds and is wholly owned by Canaima Global Opportunities Fund PCC Limited ("Canaima" or the "Fund"). Canaima is a Guernsey regulated private investment fund administered by JTC Fund Solutions (Guernsey) Limited. The Fund is limited to non-U.S. Persons and, separate from its Regulation S eligibility provisions, investors in the Fund must make sanctions related representations concerning themselves, controlling parties and beneficial owners. Its administrator conducts comprehensive sanctions screening. VGB has authority to bring this action from Cede & Co., the registered holder of the Bonds.

**No Further Champerty Discovery Is Warranted.** Champerty is the Republic's only pleaded affirmative defense. VGB made bona fide cash purchases exceeding the $500,000 threshold of Judiciary Law § 489(2) before filing suit. The Republic's unfounded theory that "such purchase" must be tested transaction by transaction is unsupported by any statute or caselaw, but, in any event, presents a legal question that is not answered by investor identities and multi-year communications review. The records produced and to be produced show the date and manner of the relevant acquisitions by Canaima and VGB and the valuation of *in specie* contributions.

The contemporaneous record independently shows that the Bonds were not acquired primarily for litigation. The Fund's offering documents describe a distressed-debt strategy to maximize recovery through "holding and waiting for restructuring . . . taking a proactive role in restructuring . . . or take[ing] legal action." Investors invest in Canaima, not VGB and receive shares in Canaima. The shares do not give investors ownership or control of any portfolio bond. [7] The Republic's assertion that investors functionally transferred Bonds "to themselves" is incorrect and ignores this basic fund structure. In effect, an investor contributing bonds *in specie* sells the bonds to the Fund at that day's market price in exchange for Fund shares and retains no ownership or control over them. An investor contributing bonds *in specie* transfers those bonds to the Fund at that day's market value in exchange for Fund shares and retains no ownership or control over them. Economically, that is no different from selling the bonds in the market and contributing the proceeds for Fund shares. Moreover, one-third of the Bonds contributed *in specie* were never sued upon.

VGB produced the complete set of quarterly reports from Q1 2021 through the commencement of this action (Q4 2023), which contemporaneously document the Fund's consideration of restructuring and other recovery alternatives as well as litigation. The Fund began acquiring Venezuela debt in February 2021 through both cash purchases and in specie contributions and this action was not filed until November 2023 as limitations periods approached. And while this action was pending, VGB affirmatively agreed to accept the terms of a fully

---

through valid transfers. Unlike here, *Mazzini* involved individual purchasers buying bonds for their own accounts with a known acquisition history (2005 WL 743090, at *4 (S.D.N.Y. Mar. 31, 2005)), not a suspicious portfolio assembled from a group of *unidentified* contributors retaining interests in the acquiring vehicle. *Limanik* denied discovery sought on "pure conjecture" (125 F.R.D. 602, 608 (S.D.N.Y. 1989)), while VGB's disclosures, in contrast, raise red flags by showing a pattern of in-kind contributions settled in U.S. dollars, when GL3H was in force.

[7] *IlliquidX Ltd. v. Altana Wealth*, [2026] EWCA Civ 874, does not establish otherwise. That case concerned a confidentiality dispute involving a proposed 2019 joint-venture fund that was never launched with the parties there. It does not establish the ownership or control structure of the Fund or VGB here.

negotiated tolling agreement that would dismiss this case without prejudice and toll its claims while restructuring efforts proceeded. That was not merely a routine settlement discussion: VGB agreed to suspend the litigation itself to permit a non-litigation recovery strategy to proceed. The Republic's prior counsel negotiated the agreement but did not receive authority to proceed. That corroborates the Fund's contemporaneous records showing that litigation was one of several possible recovery strategies, not the primary purpose of the acquisitions.

The Republic nevertheless seeks a multi-year production, across multiple custodians, of all of the Fund's and VGB's communications concerning virtually every aspect of their investment in Venezuela debt from inception. Calling champerty "fact intensive" does not make every communication discoverable. The requests extend well beyond communications with investors about litigation and seeks communications with managers, financial advisor, counsel, actual or potential funders and amorphous "related parties on undefined, overbroad topics, none of which would change the facts already established. *See Mazzini v. Republic of Argentina*, No. 03 Civ. 8120 (TPG), 2005 WL 743090, at *4 (S.D.N.Y. Mar. 31, 2005), aff'd, 282 F. App'x 907 (2d Cir. 2008) (striking requests where further discovery "would not establish any set of facts which would establish a successful champerty defense" where plaintiffs acquired the bonds to collect them even though they understood litigation might be necessary). The amount in controversy does not make this discovery proportional. Proportionality turns on the importance and marginal utility of the discovery and whether its likely benefit justifies its burden. *See Vaigasi v. Solow Mgmt. Corp.*, 2016 WL 616386, at *14 (S.D.N.Y. Feb. 16, 2016). Here, it does not.

**The Republic's New OFAC and Upstream-Investor Discovery Should Be Denied.** The Republic has pleaded no OFAC or FAA defense and never requested OFAC discovery or the historical acquisition records of upstream investors – which is reason alone to deny its requests here. [8] Its contention that OFAC compliance is part of VGB's "affirmative case" does not change that. VGB must establish its present beneficial ownership and authority to enforce the Bonds. *See Chickpen, S.A. v. Bolivarian Republic of Venezuela*, No. 21 Civ. 597 (AT), 2022 WL 1684275, at *3 (S.D.N.Y. May 26, 2022) (beneficial owner authorized by Cede & Co., the registered holder, "has contractual standing to bring this action"). That does not require VGB to prove the sanctions compliance of every historical acquisition by every prior beneficial owner.

Nor is there a gap in the Fund's sanctions diligence. The Republic conflates the Regulation S definition used for subscription eligibility with sanctions compliance. Investors make sanctions representations, and the Fund's licensed administrator screens investors against multiple sanctions lists at onboarding and daily thereafter and conducts substantial KYC due diligence (none of which

[8] None of its Requests contain a single reference to OFAC or sanctions or upstream investor information. The Republic's footnote suggesting otherwise is misleading. Its Requests define "You," "Your," and "Plaintiff" solely as VGB, and "Acquisition" as a transaction through which *VGB* obtained beneficial ownership, possession, or rights in the Bonds. Thus, Requests directed to "Your" acquisition, payments, due diligence, organization, governance, or standing (Reqs. 6-8, 11, 12) do not become requests directed at the upstream investors' historical acquisitions of bonds later contributed to Canaima. Req. 13 asks for "information sufficient to identify the ultimate beneficial owners of Plaintiff," and not, as the Republic now describes it, the "*bond's* ultimate beneficial owners." Documents sufficient to identify VGB's ultimate beneficial owner, which is Canaima, were produced. Req. 4 was not a request for documents regarding an upstream investor-by-investor sanctions investigation. Reqs. 1–3 did not request certifications or historical transfer-compliance records from upstream investors.

was requested in discovery). The Republic's new (and unpleaded) OFAC and FAA theories do not convert this case into an inquiry into foreign investors' worldwide acquisition histories. The Republic cannot use discovery to determine whether a new affirmative defense exists. See *Segan v. Dreyfus Corp.*, 513 F.2d 695, 696 (2d Cir. 1975)

VGB does not possess or control the upstream investors' historical acquisition records. The Republic says this "underscores" its need for upstream investors' identities so that it can seek those records "directly." It instead demonstrates the extraordinary breadth of the request. The Republic seeks the identities of almost fifty foreign nonparties so it can pursue discovery around the world into whether, somewhere in the historical chain, an investor may once have acquired a beneficial interest in a transaction that may have violated OFAC restrictions.

The Republic also conflates a U.S. jurisdictional nexus with an OFAC violation. The fact that transaction proceeds passed through U.S. financial institutions does not make an otherwise authorized transaction prohibited. GL 3H permitted divestments and transfers of covered Bonds to non-U.S. persons. Even assuming that, notwithstanding sanctions controls at financial institutions, clearing systems, custodians, and other market participants, an upstream investor once acquired a beneficial interest in violation of OFAC restrictions, that would not establish that VGB's subsequent acquisition of its book-entry interest violated OFAC or deprive VGB of standing. These are Global Bonds registered in the name of Cede & Co.; beneficial owners hold fungible book-entry interests, not separately identifiable paper Bonds. OFAC does not require a subsequent beneficial owner to reconstruct the sanctions compliance of prior acquisitions by upstream beneficial owners. There are no litigation funders here. There is no justification or need for discovery into the identities or historical transactions of upstream investors. *See Limanik, S.A. v. McKinley Allsopp, Inc.*, 125 F.R.D. 602, 608 (S.D.N.Y. 1989) (denying defendant's request for the identity of plaintiff's customers or their financial profiles where contention that they might have been involved in wrongdoing was based on "pure conjecture.").[9]

VGB has agreed to produce redacted subscription contract notes showing each contribution to the Fund. They include the date, cash contribution amount and/or in specie bonds (by ISIN, face amount, and market price of the bonds on that date), and shares in the Fund provided in exchange, using anonymized investor identifiers (*i.e.*, Investor A). This is all the relevant transactional facts. An Attorneys' Eyes Only designation does not make the identities relevant or proportional and is inconsistent with the Republic's stated purpose of pursuing discovery from overseas nonparties whose personal and financial affairs are not at issue. The sensitivity is heightened because disclosure to the sovereign debtor could expose nonparty investors to significant financial and personal-security risks.

The Republic's new FAA theory fares no better. Section 6 does not impose a certification requirement on every secondary-market transfer of beneficial ownership. Its certification provisions apply only to specified transfers between Global Note categories; they do not turn every book-entry transfer in the upstream chain into an FAA compliance inquiry.

[9] JTC does not "manage" the Fund or VGB and the Republic's claim that JTC may have U.S.-based employees within the broader JTC organization does not convert VGB into a U.S. Person. *See* 31 C.F.R. § 591.312. VGB is organized in the BVI and its administrator is a Guernsey entity.

Respectfully submitted,

*/s/ Sari E. Kolatch*
Sari E. Kolatch
*Counsel for Plaintiff VGB Limited*

*/s/ Hal S. Shaftel*
Hal S. Shaftel
*Counsel for Defendant the Bolivarian Republic of Venezuela*