**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| VGB LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>THE BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>Defendant. | Case No. 1:23-cv-09933-AT |

**DEFENDANT THE BOLIVARIAN REPUBLIC OF VENEZUELA'S OBJECTIONS TO THE MAGISTRATE JUDGE'S OCTOBER 22, 2026, RULING DENYING BOND OWNERSHIP-RELATED DISCOVERY**

# TABLE OF CONTENTS

**Page**


PRELIMINARY STATEMENT ....... 1

BACKGROUND ....... 5

I. OFAC Regulations Applicable to Republic Bond Transactions. ....... 5
II. VGB's Acquisition Structure Creates Substantial Compliance Risks. ....... 5
III. VGB's Conclusory Pleading Regarding Ownership of Bonds. ....... 7
IV. The Oral Ruling at the Conference. ....... 7

LEGAL STANDARD ....... 9

ARGUMENT ....... 10

I. THE RULING MISSTATES THE LAW AND IS UNSUPPORTED BY THE RECORD. ....... 10

A. As VGB Must Prove It Validly Owns the Bonds, Discovery Tailored to Acquisition Legality is Proper. ....... 11
B. The Ruling Impermissibly Rests on VGB's Advocacy, Not Evidence. ....... 15
C. Nothing in the Undeveloped Record Evidences That VGB Validly Acquired the Bonds. ....... 16

II. THE DISCOVERY SOUGHT IS NARROWLY TAILORED RELEVANT INFORMATION. ....... 17

A. The Republic Seeks Only the Facts That Determine Whether VGB Validly Owns the Bonds. ....... 17
B. The Discovery Sought is Proportional, and a Protective Order Addresses Any Confidentiality Concerns. ....... 18
C. VGB's *Lemanik* Reliance Supports the Republic's Position. ....... 20
D. The Request Does Not Require Tracing "Every Single Historical Transfer." ....... 20

CONCLUSION ....... 21

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bassidji v. Goe*,
413 F.3d 928 (9th Cir. 2005) .......... 14

*Chickpen, S.A. v. Bolivarian Republic of Venezuela*,
2022 WL 1684275 (S.D.N.Y. May 26, 2022) .......... 12,13

*Cortland St. Recovery Corp. v. Hellas Telecomm.*,
790 F.3d 411 (2d Cir. 2015) .......... 9

*Coventry Cap. US LLC v. EEA Life Settlements Inc.*,
333 F.R.D. 60 (S.D.N.Y. 2019) .......... 9

*Coventry Cap. US LLC v. EEA Life Settlements Inc.*,
334 F.R.D. 68 (S.D.N.Y. 2020) .......... 21

*El Badrawi v. Dep't of Homeland Sec.*,
258 F.R.D. 198 (D. Conn. 2009) .......... 16

*FPP, LLC v. Xaxis US, LLC*,
2016 WL 1733466 (S.D.N.Y. Apr. 29, 2016) .......... 9

*Griffin v. Sheeran*,
767 Fed. App'x 129 (2d Cir. 2019) .......... 15

*Havana Club Holding, S.A. v. Galleon, S.A.*,
203 F.3d 116 (2d Cir. 2000) .......... 11, 13

*Hoxhaj v. Michael Cetta, Inc.*,
2022 WL 1664963 (S.D.N.Y. May 25, 2022) .......... 10

*IlliquidX Ltd. v. Altana Wealth Ltd.*
[2026] EWCA (Civ) 874 .......... 5

*Koon v. United States*,
518 U.S. 81 (1996) .......... 9

*Lary v. Republic of Cuba*,
643 F. Supp. 194 (S.D.N.Y. 1986) .......... 14

*Lemanik, S.A. v. McKinley Allsopp, Inc.*,
125 F.R.D. 602 (S.D.N.Y. 1989). . .......... 20

*MacCartney v. O'Dell*,
2017 WL 766906 (S.D.N.Y. Feb. 27, 2017) .......... 12

*MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*,
232 F. Supp. 3d 558 (S.D.N.Y. 2017) .......... 12

*Orvis v. Brownell*,
345 U.S. 183 (1953) .......... 14

*Propper v. Clark*,
337 U.S. 472 (1949) ........ 14

*West Coast Settlements II, LLC v. TVPX ARS, Inc.*,
820 F. Supp. 3d 286 (S.D.N.Y. 2025) ........ 12

**Statutes**

28 U.S.C. § 636(b)(1)(A) ........ 9

General License No. 3H ........ 2, 5, 13, 20

General License No. 3H ¶ (a) ........ 2, 13, 14, 17, 18

General License No. 3H ¶ (e) ........ 17

General License No. 3H ¶ (e)(1) ........ 2, 5, 13, 18

General License No. 3H ¶ (e)(2) ........ 2, 4, 5, 13, 14, 16, 18

General License No. 3H ¶ (f)(2) ........ 2, 5, 13, 17, 18

N.Y. U.C.C. § 8-105(a) ........ 14, 18

N.Y. U.C.C. § 8-303 ........ 14

**Other Authorities**

17 C.F.R. § 230.902(k) ........ 16

31 C.F.R. § 591 ........ 1

31 C.F.R. § 591.201 ........ 2, 4, 5, 13, 18

31 C.F.R. § 591.202(a) ........ 2, 4, 5, 11, 13, 18, 20

31 C.F.R. § 591.202(c) ........ 14, 18

31 C.F.R. § 591.202(d) ........ 18

31 C.F.R. § 591.202(e) ........ 19

31 C.F.R. § 591.305 ........ 5, 13, 18

31 C.F.R. § 591.312 ........ 2, 5, 16, 18

Fed. R. Civ. P. 8(b)(5) ........ 7

Fed. R. Civ. P. 26(b)(1) ........ 10, 12, 19

Fed. R. Civ. P. 34(a)(1) ........ 21

Fed. R. Civ. P. 72(a) ........ 1, 9

U.S. Const. art. VI, cl. 2 ........ 14

Pursuant to Federal Rule of Civil Procedure 72(a), Defendant The Bolivarian Republic of Venezuela (the "Republic") submits this memorandum of law in support of its objections to the Magistrate Judge's oral ruling (the "Ruling") at the conference on October 22, 2026 (the "Conference"). Transcript of Status Conference at 73:4-75:2 (Oct. 22, 2026) ("Tr.") (Exhibit ("Ex.") No. 1 to the Declaration of Hal S. Shaftel ("Shaftel Decl.")); ECF No. 54. In relevant part, the Ruling denied certain discovery the Republic seeks from Plaintiff VGB Limited ("VGB") concerning VGB's alleged ownership of the bonds (the "Bond" or "Bonds") for which it seeks recovery, including compliance with regulations of the U.S. Treasury Department, Office of Foreign Assets Control ("OFAC") governing transactions involving the Bonds.

## PRELIMINARY STATEMENT

VGB seeks a judgment of approximately half a billion dollars[1] against the Republic for alleged breach of payment obligations under a series of seven Republic-issued Bonds. Whether VGB validly owns some or all of its disparate holdings remains unresolved. To recover on the Bonds, VGB must prove that it is the valid beneficial owner of each Bond on which it sues. Here, that question is far from routine. Transactions involving the Bonds are governed by the Venezuela Sanctions Regulations, (31 C.F.R. Part 591), and by general licenses administered by OFAC and related Executive Orders (together, the "OFAC Regulations"). Whether VGB validly owns the full portfolio of the subject Bonds therefore depends in critical part on whether the transactions through which it acquired all or any of them complied with those OFAC Regulations. VGB cannot carry that burden merely through its counsel's say-so, without development of the relevant evidentiary record.

[1] As of the date VGB's Third Amended Complaint was filed, May 26, 2026 ("TAC"), VGB sought in excess of $477 million, plus interest and fees.

When VGB acquired its holdings, the OFAC Regulations permitted dealings in the Bonds only on strict conditions. Under General License No. 3, and specifically General License No. 3H ("GL 3H"), (1) any transfer had to be "to a non-U.S. person," and U.S. persons could not "purchase or invest in, or . . . facilitate the purchase of or investment in, directly or indirectly," the Bonds, (GL 3H ¶¶ (a), (e)(2)); and (2) any dealings with blocked persons were prohibited, including those on OFAC's Specially Designated Nationals and Blocked Persons List (the "SDN List"). *Id.* ¶¶ (e)(1), (f)(2). OFAC broadly defines "U.S. person" to include any U.S. citizen or permanent resident, wherever located, any entity organized under U.S. law, and "any person in the United States." 31 C.F.R. § 591.312.

Under its suspect structure, British Virgin Islands-based VGB did not acquire most of the Bonds on the open market. Rather, VGB's document production shows that it obtained the vast majority of its holdings from its Guernsey-based parent, Canaima Global Opportunities Fund PCC Limited ("Canaima"), which, in turn, received them from a small group of investors as in-kind contributions in exchange for Canaima shares. Joint Letter at 1, 4, ECF No. 50 (Sept. 25, 2026) ("Joint Ltr."); Tr. 6:10–18, 23:2–6, 61:7–8. Under that structure, an investor that contributes Bonds does not in reality exit its position. It instead exchanges a direct interest in the Bonds for an indirect interest through receipt of Canaima shares. VGB, through Canaima, may therefore hold Bonds it never validly acquired. If a counterparty was on the SDN List, the transfer was "null and void." 31 C.F.R. §§ 591.201, 591.202(a). Further, if a U.S. person contributed Bonds in exchange for Canaima shares, it still maintains an indirect interest in those same Bonds. Likewise, any U.S. person holding a stake in Canaima would possess an indirect, ultimate interest in the Bonds. In economic substance, those types of exchanges are between U.S. persons and, as such, GL 3H prohibits them.

The Republic therefore seeks narrow discovery to test whether VGB acquired its Bonds by lawful, OFAC-compliant means. For each transaction through which the subject Bonds entered VGB's portfolio, the Republic is entitled to ascertain whether the counterparty was a U.S. person or a blocked person, and what OFAC sanctions screening VGB, Canaima, or their administrators actually performed. That discovery is neither burdensome nor disproportionate, particularly given the enormous financial recovery that VGB seeks to obtain. Indeed, VGB has produced only 72 documents in this action. The Republic seeks documents for which no genuine burden or prejudice is identified, and has no objection to production under attorneys'-eyes-only protections to address any purported confidentiality concerns. Tr. at 11:18–24.

In denying the facially relevant, focused discovery, the Magistrate Judge erred with respect to both the governing law and the operative facts:

First, the Magistrate Judge erred on the law by holding that "merely the fact that . . . they hold the [Bonds] is sufficient" to show lawful ownership. Tr. at 73:13–14. At the Conference, the Magistrate Judge recognized that VGB's status as a "legitimate holder" is "a foundational question that the plaintiff, in fact, has the burden of proving." Tr. 15:20–16:3. But possessing the Bonds by itself is not proof of legitimate ownership. That is particularly so in the context of transactions subject to the OFAC Regulations. Contrary to the Magistrate Judge's reasoning elsewhere, proof of valid ownership is not tethered to an unpled affirmative defense but is an element of VGB's case in chief it must prove. Tr. 73:24–74:4 ("this information potentially would be relevant to an affirmative defense" but "I don't find that [the Republic] ha[s] articulated any facts" substantiating it). The question is not whether an affirmative defense supports discovery, but whether VGB can carry its own burden of proving lawful ownership, which the Republic is entitled to test.

Second, the Magistrate Judge erred on the facts by inferring OFAC compliance from the undeveloped record. The record clearly raises at least serious questions regarding whether VGB effectively screens for prohibited transactions with persons on the SDN List and/or whether its structure unlawfully lets U.S. persons contribute the Bonds to a nominally offshore fund while retaining an indirect interest in them through Canaima shares. That is not a permitted divestment to a non-U.S. person; in essence, it is the type of indirect investment GL 3H precludes. Yet, VGB's governance documents only raise more red flags by excluding "U.S. persons" under a securities-law definition that omits U.S. citizens and permanent residents living abroad, Joint Ltr. at 2; *see* 17 C.F.R. § 230.902(k)(1); 31 C.F.R. § 591.312.

. Nor has VGB produced any screening records or other evidence that any compliance procedures alluded to on paper actually occurred. Joint Ltr. at 2.

VGB responds only that the fund is limited to non-U.S. persons and investors are screened. Joint Ltr. at 4; Tr. 25:18–26:13. But that is counsel's commentary, not admissible evidence. Without discovery, the Republic cannot determine whether any counterparty was on the SDN List, which would render the transfer of its Bonds "null and void," (31 C.F.R. §§ 591.201, 591.202(a)), or whether any U.S. person contributed Bonds in exchange for Canaima shares, an investment GL 3H also prohibits. GL 3H ¶ (e)(2).

The discovery that the Republic seeks is narrowly tailored to test the assertions of valid ownership that VGB wants the Court to accept purely at face value. But more than VGB's say-so is warranted. Accordingly, the Court should set aside the Ruling and order the requested discovery concerning these ownership-related matters, including OFAC compliance.

## BACKGROUND

### I. OFAC Regulations Applicable to Republic Bond Transactions.

Pursuant to OFAC Regulations, U.S. law permits certain dealings in Republic-issued Bonds on strict conditions. During the period most relevant here, those dealings were governed by GL 3H. *See* Office of Foreign Assets Control, Venezuela Sanctions Regulations, General License No. 3H & Annex (May 12, 2020). GL 3H's Annex lists each of the bond series at issue. GL 3H required that any transfer of Bonds "be to a non-U.S. person," (GL 3H ¶ (a)), and U.S. persons could not "purchase or invest in, or . . . facilitate the purchase of or investment in, directly or indirectly," the Bonds. (*Id.* ¶ (e)(2).) GL 3H also precluded dealings with blocked persons. *Id.* ¶¶ (e)(1), (f)(2). OFAC defines "U.S. person" broadly to include any U.S. citizen or permanent resident, wherever located, any entity organized under U.S. law, and "any person in the United States." 31 C.F.R. § 591.312.

OFAC separately maintains the SDN List, which identifies blocked persons. Property in which a blocked person holds any interest, "direct or indirect," is blocked, (31 C.F.R. §§ 591.201, 591.305), and a transfer of blocked property "is null and void." *Id.* § 591.202(a).

### II. VGB's Acquisition Structure Creates Substantial Compliance Risks.

VGB is a British Virgin Islands corporation wholly owned by Canaima, a Guernsey private investment fund administered by JTC Fund Solutions (Guernsey) Limited (together with its affiliates, "JTC"). Joint Ltr. at 4. IlliquidX Limited ("IlliquidX"), a U.K.-based entity, functions as the investment advisor of Canaima and VGB. As IlliquidX advertises on its own website, it founded and operates the Canaima fund. *See Our History*, IlliquidX, www.illiquidx.com/our-history. As public U.K. court records reveal, IlliquidX developed a "plan" around 2019 to establish a fund similar to VGB which would pool together holders of Venezuelan bonds for collection purposes. *IlliquidX Ltd. v. Altana Wealth Ltd.* [2026] EWCA (Civ) 874 [12]–[15], [22]–[24] (Eng.)

(finding that a similarly structured Canaima fund was a vehicle to pool together Venezuelan debt holders to pursue claims under a single umbrella).[2]

Canaima began receiving Venezuelan debt in February 2021, primarily through in-kind contributions from its investors. Joint Ltr. at 4. An investor contributing bonds in-kind delivers them to Canaima and receives Canaima shares valued at Canaima's determination of the Bonds' market price that day. *Id.* Investors invest in Canaima, not VGB; Canaima then transfers holdings to an account in the name of VGB. *Id.*; Tr. 62:19–21. JTC, though formally a Guernsey entity, manages its Latin American business out of Miami, and Canaima's capital is denominated in U.S. dollars. Joint Ltr. at 2.

VGB's 72-document production shows that VGB acquired more than 75% of its Bonds through in-kind contributions, mostly from Canaima, which itself obtained most of its Bonds from a small group of investors who contributed them in exchange for fund shares. *Id.* at 1, 4; Tr. 6:10–18, 61:7–8, 62:7-21. VGB represents that Canaima has fewer than 50 investors. Joint Ltr. at 3. This structure allows an investor to move Bonds into ostensibly non-U.S. entities, first Canaima and then VGB, while still keeping an indirect interest in those Bonds through its Canaima shares. *Id.* at 1, 4; Tr. 6:10–7:20, 61:7–8, 62:7-21.

Canaima's and VGB's fund documents appear to recognize the risks of non-compliance with OFAC Regulations. In fact, those documents purport to restrict U.S. persons from conveying Bonds to VGB and require all Bond contributors to undergo compliance screening. *See* Tr. 25:17–20, 26:2–5. However, it is problematic that the fund documents reference a definition of U.S. persons narrower than the broader definition used in the OFAC Regulations. While the fund documents note non-compliance risks, VGB has produced no compliance documents.

---

[2] https://8newsquare.co.uk/wp-content/uploads/Illiquidx-v-Altana-Wealth-Ors.pdf

## III. VGB's Conclusory Pleading Regarding Ownership of Bonds.

Recognizing that ownership is a basic element in its case in chief, VGB alleges it "is the beneficial owner" of specified principal amounts of seven series of Bonds. Third Amended Complaint ("TAC") ¶¶ 17, 19, 21, 23, 25, 27, 29, ECF No. 38. However, the pleading offers no details as to the acquisitions of the Bonds except VGB "acquired the Bonds for investment purposes" and "purchased the Bonds for a sum of more than $500,000 in the aggregate." *Id.* ¶ 11. The TAC is silent about the identity of the counterparties conveying the Bonds, any due diligence to ensure compliance with OFAC Regulations, or the in-kind contribution nature of the acquisitions.

In response, the Republic denied VGB's ownership and standing allegations, (Def.'s Answer to Third Am. Compl. ¶¶ 1, 4, 10, 11, 17, 19, 21, 23, 25, 27, 29, ECF No. 39 ("Answer"); *see* Fed. R. Civ. P. 8(b)(5)), denied that VGB "is entitled to any relief," (Answer at 13), and declined to assume "the burden of proof where Plaintiff carries such burden." *Id.*

According to VGB, it seeks in excess of $477 million from the Republic. TAC, Prayer for Relief. Despite the magnitude of its claimed damages, VGB has produced only 72 documents and resists providing the basic, non-burdensome discovery that would show whether, as a predicate to recovery, it lawfully owns the Bonds.

## IV. The Oral Ruling at the Conference.

At the conference on October 22, 2026, the Magistrate Judge denied, on the record, the Republic's request for ownership-related discovery involving OFAC compliance issues. Tr. 73:4–8. In doing so, the Magistrate Judge acknowledged that the discovery "potentially would be relevant to an affirmative defense," (Tr. 73:24–25), and found it unnecessary to consider the absence of any undue burden in relation to the requested discovery. Tr. 31:23-32:6 ("I don't need to hear burden"). The Ruling rested on several disputed premises.

First, despite recognizing VGB's burden to establish ownership (Tr. 15:20-16:3, 21:4-12, 21:16-18), the Magistrate Judge ultimately concluded that VGB need not prove how it acquired the Bonds. According to the Magistrate Judge, "the legitimacy of the method . . . of acquiring the instruments . . . is not something that has to be proven by plaintiff" and "merely the fact that . . . they hold the [Bonds] is sufficient." Tr. 73:9–14.

Second, the Magistrate Judge relied on counsel's unsworn arguments, not evidence, to conclude that the Bonds were properly acquired. Tr. 22:13–21, 35:24–36:4. Based only on lawyer say-so, the Magistrate Judge concluded that the Bonds pass through "legitimate clearinghouses who have an obligation to do the due diligence to make sure that the transfers are, in fact, OFAC compliant." Tr. 35:24–36:4. That was predicated entirely on VGB's counsel's argument, not a declaration, screening record, or other actual evidence in support. *See* Tr. 22:13–23:1, 25:18–26:13, 28:9–11; Joint Ltr. at 2. In the Magistrate Judge's view, the Republic had not "articulated any facts that would show" OFAC violations as distinct from "red flags" and the Magistrate Judge characterized the requested discovery as "a fishing expedition." Tr. 74:2–12; *see also* Tr. 74:13–75:2.[3] The Magistrate Judge also did not address that, as between the parties, the relevant facts are exclusively within VGB's control. And despite the concern regarding a "fishing expedition," the Magistrate Judge, and VGB's counsel, elsewhere acknowledged ownership as an element of VGB's own affirmative case, (Tr. 15:20-16:3, 21:4-12, 21:16-18) and discounted the absence of any claim of undue burden regarding the requested discovery. Tr. 31:23-32:6. OFAC compliance

[3] At the Conference, the Magistrate Judge found that the Republic's request for champerty-related discovery was "appropriate," directing the parties to meet-and-confer on a "narrowly tailored request" for "investor-level communications about . . . litigation in advance of the acquiring of these instruments." Tr. 76:6–77:10; *see also* Tr. 77:17–78:4.

undeniably is relevant to the validity of ownership, as even VGB's corporate documents admit. *See* Tr. 25:17–20, 26:2–5.

Third, the Magistrate Judge was "persuaded by the argument that plaintiff made" that, if the requested discovery were permitted, "every single case of this type would have . . . endless discovery" requiring plaintiffs "to trace every single historical transfer of an instrument." Tr. 73:14–23. However, the discovery sought is not about "trac[ing] every . . . historical transfer" but narrowly about VGB/Canaima's acquisitions of their Bonds. Indeed, the Magistrate Judge did not address the fact that VGB can only provide information in its possession, custody, or control, which necessarily limits the scope of the requested discovery and excludes remote historical transactions.

**LEGAL STANDARD**

A district court must "modify or set aside any part of [a magistrate judge's nondispositive] order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see* 28 U.S.C. § 636(b)(1)(A); *FPP, LLC v. Xaxis US, LLC*, No. 14-cv-06172, 2016 WL 1733466, at *2 (S.D.N.Y. Apr. 29, 2016). An order is contrary to law when it fails to apply, or misapplies, relevant statutes, case law, or rules of procedure, and a finding is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been made. *Coventry Cap. US LLC v. EEA Life Settlements Inc.*, 333 F.R.D. 60, 64 (S.D.N.Y. 2019) ("*Coventry I*").

Here, the Ruling rests on clear legal and factual errors in various respects. To begin, the Ruling is premised on the view that VGB need not provide evidence that it validly acquired the instruments on which it sues. That constitutes a conclusion of law, which the Court reviews *de novo*. *Cortland St. Recovery Corp. v. Hellas Telecomm.*, 790 F.3d 411, 418 (2d Cir. 2015) (reviewing de novo district court's conclusion that plaintiff lacked standing because plaintiff failed to allege facts affirmatively and plausibly suggesting that it had a proprietary interest in, or legal

title to, claims arising under defaulted subordinated notes); *see Koon v. United States*, 518 U.S. 81, 100 (1996) ("A district court by definition abuses its discretion when it makes an error of law."). Further, the Ruling is premised on the view that the undeveloped record, notwithstanding whatever "red flags" (Tr. 74:7-10) exist, does not support discovery into ownership and related OFAC compliance matters. However, the Magistrate Judge's inferences from the record, particularly when relevant evidence has not been adduced, are unwarranted and amount to clear error. *Advanced Analytics Inc. v. Citigroup Glob. Mkts., Inc.*, 301 F.R.D. 47, 52-53 (S.D.N.Y. 2014) (applying clear error standard to magistrate judge's factual findings).

When viewed through a proper lens, the tailored discovery at issue clearly relates to relevant issues (*i.e.*, ownership of the Bonds), is proportional in scope (*i.e.*, no undue burden is even identified), and is otherwise proper. A party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Information bearing on an element the plaintiff must prove, and that the defendant has denied, is relevant to the plaintiff's "claim" under that standard. *See id.*; Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment; *Hoxhaj v. Michael Cetta, Inc.*, 2022 WL 1664963, at *1 (S.D.N.Y. May 25, 2022) ("Relevance is . . . to be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense." (quotation marks and citations omitted)). As further addressed below, the Magistrate Judge erred by denying what is important discovery.

## ARGUMENT

### I. THE RULING MISSTATES THE LAW AND IS UNSUPPORTED BY THE RECORD.

Nowhere does the Ruling conclude that the requested discovery is either irrelevant or unduly burdensome. To the contrary, the Magistrate Judge recognized that the information

"potentially would be relevant." Tr. 73:24–25. The Ruling instead rests on three mistaken premises. First, the conclusion that VGB need not prove how it acquired the Bonds, and that holding them in an account "is sufficient," Tr. 73:9–14, is contrary to law. *See infra* Point I.A. Second, the concern that the discovery would require tracing "every single historical transfer" in "every single case of this type," Tr. 73:14–23, rests on VGB's unsworn contention, indeed lawyer advocacy, that the Bonds pass through clearinghouses that screen for OFAC compliance. Tr. 35:24–36:4. That assertion is not evidence, does not describe the in-kind contributions through which VGB acquired most of its Bonds, and sorely mis-frames the narrowly tailored discovery the Republic seeks. *See infra* Point I.B; *see also infra* Point II.D. Third, ignoring red flags in the record, the Ruling finds that the Republic has not "articulated any facts that would show" testing OFAC compliance is "warranted." Tr. 74:2–4. That finding is clearly erroneous. Nothing in the record shows that VGB validly acquired the Bonds, and the Republic cannot be required to prove OFAC violations before it obtains the discovery needed to uncover them. *See infra* Point I.C. The Ruling leaves the Republic unable to test whether VGB's acquisitions of the Bonds satisfied the OFAC Regulations, and it should be set aside.

### A. As VGB Must Prove It Validly Owns the Bonds, Discovery Tailored to Acquisition Legality is Proper.

According to the Magistrate Judge, "merely the fact that . . . [VGB] hold[s] the [Bonds] is sufficient." Tr. 73:13–14. That holding is contrary to law. Under the OFAC Regulations, a transfer of blocked property in violation of their terms "is null and void and shall not be the basis for the assertion or recognition of any interest in" that property. 31 C.F.R. § 591.202(a). In such a transaction, the transferee acquires no legal title. *Havana Club Holding, S.A. v. Galleon, S.A.*, 203 F.3d 116, 121 n.2, 122, 126 (2d Cir. 2000) (unauthorized assignment left downstream assignee

with "no enforceable rights," which reverted to the assignor). Merely holding the Bonds, by itself, proves nothing about lawful ownership if the transfer that put them in VGB's hands was void.

That is significant here because ownership is an element of VGB's claim, not an affirmative defense that the Republic must plead.[4] Even VGB's counsel conceded that VGB "has to demonstrate that it is the beneficial owner of the . . . bonds and that it has authority to sue." Tr. 21:16–19; *see also West Coast Settlements II, LLC v. TVPX ARS, Inc.*, 820 F. Supp. 3d 286, 289 (S.D.N.Y. 2025) (a plaintiff "cannot bring a breach of contract claim based upon a contract to which it was not a party and where it has not alleged that" the rights to sue "were properly . . . transferred to" it). While VGB conclusorily pled beneficial ownership of the Bonds, (TAC ¶¶ 1, 4, 10, 17–29), the Republic denied the allegations. Answer ¶¶ 1, 4, 10, 11, 17–29. VGB further injected the validity of its acquisitions into the case by alleging it "purchased the Bonds for a sum of more than $500,000 in the aggregate." TAC ¶ 11.

Discovery bearing on an element that a plaintiff pled and a defendant denied is "relevant to [a] party's claim." Fed. R. Civ. P. 26(b)(1); Tr. 14:13-19, 32:12-13 (the Republic explained that the requested discovery "goes to an element in . . . VGB's own case" because "the beneficial owner means the valid beneficial owner"). Nor does VGB's misplaced reliance on *Chickpen, S.A. v. Bolivarian Republic of Venezuela*, No. 21-cv-597, 2022 WL 1684275 (S.D.N.Y. May 26, 2022)

[4] Even if VGB were not required to plead how it received the Bonds, the Republic would still be entitled to discovery on the subject because the information is relevant to the elements VGB must prove. Discovery is not confined to the precise allegations in the pleadings but rather the issues relevant to the claim. *See MacCartney v. O'Dell*, 2017 WL 766906, at *8 (S.D.N.Y. Feb. 27, 2017) ("[D]iscovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues."). Indeed, information may be relevant to the central elements of a case even when it is not itself the basis of a claim. *See MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*, 232 F. Supp. 3d 558, 567 (S.D.N.Y. 2017) (evidence of "shortfall in segregated customer funds, while not a basis for the claims against PwC, [was] relevant to the central elements of the case").

(Joint Ltr. at 5) bolster its position. Resolving a separate issue, *Chickpen* holds that a beneficial owner authorized by Cede & Co., the registered holder, "has contractual standing to bring this action." *Id.* at *3. That holding addresses who may sue under the governing bond documents. But that case had nothing whatsoever to do with whether the beneficial owner's interest was validly acquired. Further, nothing in *Chickpen* suggests that authorization by the registered holder can validate a transfer otherwise prohibited by federal law.

GL 3H authorized dealings in the Bonds, and each ISIN at issue appears in its Annex. *Compare* TAC ¶¶ 17, 19, 21, 23, 25, 27, 29, *with* GL 3H Annex. But that authorization was conditional. Each transfer "must be to a non-U.S. person." GL 3H ¶ (a). The license does not authorize "U.S. persons to purchase or invest in, or to facilitate the purchase of or investment in, directly or indirectly," the Bonds, *id.* ¶ (e)(2), or dealings with blocked persons other than the Government of Venezuela, *id.* ¶¶ (e)(1), (f)(2). The Second Circuit applies general licenses according to their terms and refuses to expand them, because an expansive reading "would swallow much of the general rule" of the sanctions program. *Havana Club*, 203 F.3d at 123–25.

A non-compliant transaction defeats VGB's claim to ownership in either of two ways.

First, a Bond becomes blocked property when a blocked person holds a "direct or indirect" interest in it. 31 C.F.R. §§ 591.201, 591.305. If any transferor or contributor of Bonds to VGB was such a person, or an entity owned 50% or more by one, the transfer falls outside GL 3H and is void, and VGB is not the valid beneficial owner, whatever the TAC alleges. *Id.* § 591.202(a). Whether any counterparty was a blocked person cannot be determined without knowing who the counterparties were, which is why the Republic seeks basic identifying information. *See infra* Point II.A.

Second, a U.S. person who contributes Bonds to Canaima in exchange for Canaima shares has not divested; it has exchanged a direct interest in the Bonds for an indirect interest in the same Bonds. That exchange is neither a genuine divestment under paragraph (a) nor an investment "ordinarily incident and necessary to the divestment or transfer of holdings" under paragraph (e)(2). GL 3H ¶¶ (a), (e)(2). It therefore falls outside GL 3H entirely and remains prohibited by the Executive Orders GL 3H otherwise relaxes. *See* Exec. Order No. 13808 § 1(a)(iii), 82 Fed. Reg. 41,155 (Aug. 29, 2017). Courts will not enforce rights resting on a transaction federal sanctions prohibit. *See Bassidji v. Goe*, 413 F.3d 928, 936–39 (9th Cir. 2005); *cf. Lary v. Republic of Cuba*, 643 F. Supp. 194, 197–98 (S.D.N.Y. 1986). At a minimum, whether VGB's interest rests on such a transaction directly affects whether VGB can prove valid ownership.

Nor can VGB avoid relevant discovery by claiming it acted in good-faith. Even if that characterization is blindly accepted (it decidedly should not be), where a transfer was void, VGB's knowledge is irrelevant: common law or state-law protections for good faith purchasers cannot validate a transfer that federal law declares void. *See* U.S. Const. art. VI, cl. 2; *Propper v. Clark*, 337 U.S. 472, 485-89 (1949); *Orvis v. Brownell*, 345 U.S. 183, 187-89 (1953). Any exception for an innocent transfer is solely at OFAC's discretion to apply and requires a report to OFAC that VGB has never indicated was made. 31 C.F.R. § 591.202(c)–(d); *see Lary*, 643 F. Supp. at 196. Where a transfer was not void, VGB cannot claim good-faith purchaser status under New York law. VGB is not a good-faith purchaser because it either deliberately avoided learning about the OFAC Regulations' implications for VGB's Bonds or had "notice" of the OFAC Regulations and their implications on VGB's transactions. *See* N.Y. U.C.C. §§ 8-105(a), 8-303. Counterparty identity therefore determines whether a transfer was void or prohibited, and VGB's knowledge

determines whether VGB can claim protection from any defect that remains. The Republic has been denied both.

**B. The Ruling Impermissibly Rests on VGB's Advocacy, Not Evidence.**

The Magistrate Judge impermissibly inferred VGB's compliance with OFAC Regulations based on VGB's counsel's arguments, not on actual, admissible evidence. The Magistrate Judge accepted that the Bonds pass through "legitimate clearinghouses who have an obligation to do the due diligence to make sure that the transfers are, in fact, OFAC compliant." Tr. 35:24–36:4, 73:14-16. VGB's counsel asserted that the Bonds "are all traded through clearinghouses that are subject to regulations and OFAC sanctions," and that "OFAC itself puts the burden on the clearinghouses and the brokers to do the due diligence." Tr. 22:13–21. But VGB's counsel candidly acknowledged the lack of any meaningful or probative basis for the commentary: "I am counting on that everyone in the industry, all of the clearinghouses and brokers, are doing their job." Tr. 28:9–11. Hope is not evidence, and VGB offered nothing more. A ruling cannot rest on counsel's unsworn assertions in lieu of genuine evidence. *See Griffin v. Sheeran*, 767 Fed. App'x 129, 133 (2d Cir. 2019) ("the District Court erroneously relied on Defendants' assertions . . . that . . . the principal of SAS, had a 'long telephone conversation' with defense counsel 'just days after th[e] case was first filed' in which [principal of SAS] 'expressed his interest in the case.' This reliance was erroneous because '[a]n attorney's unsworn statements . . . are not evidence.'" (internal citations omitted)).

Even aside from its being outside the record, VGB's lawyer's description of clearinghouse operations does not pertain to the vast majority of transactions relevant to this case. Most of those transactions involve in-kind contributions by Canaima's own investors, made in exchange for fund shares, and not market trades executed through brokers. Joint Ltr. at 1, 6; Tr. 6:10–18. Whatever screening clearinghouses may perform on secondary-market trades says nothing about who contributed Bonds to the fund or whether those contributors were U.S. persons investing "directly

or indirectly" through Canaima. GL 3H ¶ (e)(2). A party cannot defeat discovery merely by assuring the court that the discovery would show nothing. *El Badrawi v. Dep't of Homeland Sec.*, 258 F.R.D. 198, 202 (D. Conn. 2009) ("A party seeking discovery of relevant, nonprivileged documents need not rely on an opposing party's arguments that the documents in question do not contain the information sought."). The Republic was entitled to test VGB's arguments rather than "take at face value that, oh, we checked." Tr. 10:24–11:1.

### C. Nothing in the Undeveloped Record Evidences That VGB Validly Acquired the Bonds.

According to VGB's counsel, "the only thing we need to establish is that we own the bonds . . . and we have standing to sue," Tr. 30:23–25, and there was "no good-faith basis to believe that JTC is lying," Tr. 31:9–14. In fact, nothing in the record supports a finding that VGB validly holds the Bonds. The record shows only:

- **A pleading that omits how VGB acquired the Bonds.** The TAC alleges only that VGB "purchased" the Bonds. TAC ¶ 11. It never mentions OFAC compliance, the identity of the sources conveying the Bonds, the implementation of screening procedures by the fund's administrators, or the mechanics of in-kind contributions involving Canaima.

- **A denial of ownership.** The Republic denied each of VGB's ownership and standing allegations. Answer ¶¶ 1, 4, 10, 11, 17–29.

- **A suspicious acquisition structure.** VGB's limited document production shows that more than 75% of its Bonds came through in-kind contributions, mostly from Canaima, which obtained most of its Bonds from a small group of investors in exchange for fund shares. Joint Ltr. at 1; Tr. 23:2–6, 61:7–8, 62:19–21. VGB's structure thus allows unidentified investors to transfer Bonds while retaining an ultimate beneficial interest in the same. VGB has produced nothing identifying those investors.

- **Screening against the wrong standard.** VGB's fund documents exclude "U.S. persons" as defined in Regulation S under the Securities Act of 1933, based on residence and place of organization—not citizenship. *See* 17 C.F.R. § 230.902(k)(1); Joint Ltr. at 2. OFAC's broader definition covers every U.S. citizen and permanent resident alien, wherever located; every entity organized under U.S. law; and "any person in the United States." 31 C.F.R. § 591.312. VGB's counsel responded that the fund documents also bar any "foreign person who is in the United States" from purchasing the Bonds. Tr. 26:2–7. But that addresses only one OFAC category and says nothing about U.S. citizens or permanent residents abroad, who are U.S. persons under OFAC but not Regulation S. A U.S. citizen in Caracas or Madrid could therefore pass the fund's screening while remaining barred from investing in the Bonds. GL 3H ¶ (e)(2). Nor does counsel's assurance that "[a]ll of

the entities here are foreign people," Tr. 26:7, resolve the issue: nationality or place of organization does not determine whether an investor is a U.S. person under OFAC.

- **No screening records produced.** VGB has "not produced any documents or evidentiary corroboration" of the sanctions screening it claims was performed. Joint Ltr. at 2. VGB did not contend otherwise at the Conference. *See generally* Tr. 31:5-14.
- **An investment thesis built on OFAC sanctions.** According to VGB's counsel, the fund's strategy was to buy the Bonds cheaply precisely because "U.S. persons can't buy these bonds." Tr. 47:1–8. That approach gives rise to the suspicion that the fund is used at least in part as a vehicle to evade the restrictions on transactions involving U.S. persons.

On this record, there was no basis for the Magistrate Judge to conclude that VGB's holdings were properly acquired. The Republic offered more than speculative "red flags." Tr. 74:7–8. Rather, it identified specific facts, drawn almost entirely from VGB's minimal document production and its counsel's statements, showing that this is "an area where relevant information is likely to be found." Tr. 74:15–17. While recognizing that the information "potentially would be relevant," Tr. 73:24–25, the Magistrate Judge imposed an erroneous standard on the Republic to justify discovery concerning VGB's ownership of the Bonds. The Republic plainly cannot offer factual details of OFAC violations before it has been allowed discovery to adduce the relevant evidence, which is exclusively within VGB's possession and control. That puts the cart before the horse.

## II. THE DISCOVERY SOUGHT IS NARROWLY TAILORED RELEVANT INFORMATION.

### A. The Republic Seeks Only the Facts That Determine Whether VGB Validly Owns the Bonds.

The Republic seeks the facts specifically tailored to test whether VGB legitimately owns the Bonds: who transferred or contributed each Bond to VGB or Canaima and whether each counterparty was a U.S. person or a blocked person. Those facts determine whether each transfer satisfied GL 3H and, therefore, whether VGB is the valid beneficial owner it claims to be. GL 3H ¶¶ (a), (e), (f)(2); TAC ¶¶ 17–29; Tr. 21:16–19.

During the meet-and-confer process, the Republic narrowed its request by dropping any demand for historical acquisition records VGB says it does not have. *Compare* Joint Ltr. at 2, *with id.* at 6. For in-kind contributions confined to the Bonds in suit, the Republic seeks only documents within VGB's possession, custody, or control, including those held by Canaima, JTC, and IlliquidX, sufficient to show the following four narrow categories of information:

- **The transactions.** The date, the cash amount, Bonds contributed (by ISIN, face amount, and market price), and the fund shares issued, including the subscription contract notes VGB has already agreed to produce. Joint Ltr. at 6.

- **The counterparties' identities.** The identity of the counterparty on each side of the transaction. Identity is the only way to determine whether a transfer was made "to a non-U.S. person," whether a contributor invested in the Bonds "directly or indirectly" through Canaima, GL 3H ¶¶ (a), (e)(2); 31 C.F.R. § 591.312, and whether any counterparty was a blocked person, or an entity owned 50% or more by one, such that the Bond was blocked property when transferred, 31 C.F.R. §§ 591.201, 591.202(a), 591.305; GL 3H ¶¶ (e)(1), (f)(2). A U.S. holder that contributes Bonds to an entity that "to the outward world may look like Guernsey/BVI," and receives an interest in that entity in return, presents exactly that question. Tr. 7:8–20.

- **Sanctions screening.** All sanctions and know-your-customer screening performed on each counterparty, including the lists and criteria applied and the results. These records show whether VGB and Canaima knew, or deliberately avoided learning, their counterparties' status. *See* N.Y. U.C.C. § 8-105(a).

- **Communications with OFAC.** All communications with OFAC concerning the Bonds or any transfer or contribution of them, including any reports under 31 C.F.R. § 591.202(d) and any license applications. These show whether any transfer was reported or retroactively validated. *Id.* § 591.202(c)–(d).

For the small subset of Bonds VGB purchased on the open market, the Republic seeks only the trade confirmations and any screening VGB performed on the transaction. VGB has no need to reconstruct any market counterparty it never knew.

### B. The Discovery Sought is Proportional, and a Protective Order Addresses Any Confidentiality Concerns.

In the Ruling, the Magistrate Judge did not reach proportionality. *See* Tr. 32:1–3 ("[I]f it's not relevant, then it doesn't matter if there's no burden whatsoever."). Even so, the Magistrate Judge recognized that the information "potentially would be relevant." Tr. 73:24–25. Relevant

information is discoverable when proportional to the needs of the case, Fed. R. Civ. P. 26(b)(1), and each proportionality factor favors production here:

- **Amount in controversy.** VGB seeks money judgments in excess of $477,304,233, plus interest, fees, and costs. TAC, Prayer for Relief ¶¶ A–H.
- **Importance of the issues.** The information goes to whether VGB holds enforceable rights in the Bonds at all, and whether any judgment in its favor would be valid. 31 C.F.R. § 591.202(e).
- **Ready access.** The records are held by VGB, Canaima, and their administrators. The Republic cannot obtain them elsewhere.
- **Absence of undue burden.** No claim of undue burden is made. Nor could it be, since VGB represents that the fund has fewer than 50 investors, Joint Ltr. at 3; *see* Tr. 11:7–10, and already claims to have produced the core transactional records, Joint Ltr. at 6. The remaining categories seek only status information and screening results that VGB acknowledges it maintains. *Id.* at 4, 5–6.

The disparity speaks for itself: VGB seeks a judgment exceeding approximately $500 million while producing only 72 documents. A plaintiff seeking that enormous magnitude of damages cannot credibly claim that a targeted request for the records of its own acquisitions is disproportionate.

Additionally, confidentiality presents no grounds for objections. VGB's purported concern about "personal-security risks" from disclosure, (Joint Ltr. at 6), is fully answered by the protections the Republic already offered: attorneys'-eyes-only treatment, with the information kept "here in the U.S." Tr. 11:18–24. The Magistrate Judge permitted anonymized production on champerty-related discovery because "the identity of the particular investors is not relevant" to the purpose behind an acquisition. Tr. 77:4–10. Sanctions compliance is different. Blocked-person and U.S.-person status attach to particular, identifiable individuals or entities. Whether a counterparty appears on the SDN List, or is owned 50% or more by someone who does, cannot be determined without knowing who that counterparty is.

### C. VGB's *Lemanik* Reliance Supports the Republic's Position.

VGB relied on *Lemanik, S.A. v. McKinley Allsopp, Inc.*, 125 F.R.D. 602 (S.D.N.Y. 1989). Joint Ltr. at 6; Tr. 24:22–25:8. Read properly, it supports the Republic. First, *Lemanik* involved discovery untethered to the transactions at issue: the identities of 84 clients, "all securities holdings or other investments" of those clients, "substantially all of Lemanik's client account records," and the plaintiff's tax returns and worldwide investment history. 125 F.R.D. at 604–05. The court refused "a walk through 84 clients' confidential financial transactions." *Id.* at 608. The Republic seeks only the transactions through which the Bonds in suit reached VGB.

Second, Lemanik's ownership was settled as a matter of law: as record holder and "purchaser," it was the real party in interest "whether it was acting for its own account or that of its clients." *Id.* at 607–08. VGB is not the registered holder; it claims a beneficial interest acquired largely through in-kind contributions whose validity turns on specific transactions. TAC ¶¶ 1, 10; Joint Ltr. at 1; 31 C.F.R. § 591.202(a).

Third, the broker's theory was "pure conjecture," resting on affiants who "felt" there was "some type of close relationship." 125 F.R.D. at 608. The Republic's request rests on GL 3H, VGB's production, and its counsel's statements. *See supra* Point I.B.

Finally, *Lemanik* contemplated precisely this request: "a narrower discovery request (directed to the specific issues shown to be present in the case)" reaching prior transactions with "an adequate nexus with the investments at issue." *Id.* at 608–10.

### D. The Request Does Not Require Tracing "Every Single Historical Transfer."

The Magistrate Judge posited that granting the request would require plaintiffs in "every single case of this type" to "trace every single historical transfer of an instrument." Tr. 73:15–23. It requires nothing of the kind.

First, it reaches only VGB's own counterparties, not "further and further and further back into prior transactions." Tr. 33:11–14. For an in-kind contribution, the counterparty is a Canaima investor that delivered specific Bonds, recorded by ISIN and face amount, for shares. Joint Ltr. at 6.

Second, it reaches only documents within VGB's "possession, custody, or control," Fed. R. Civ. P. 34(a)(1), including those held by Canaima, its sole member, and the fund's administrators, JTC and IlliquidX. VGB has shown it can obtain such documents by agreeing to produce Canaima's subscription contract notes and by searching those entities' files for champerty discovery. Joint Ltr. at 6; *see Coventry Cap. US LLC v. EEA Life Settlements Inc.*, 334 F.R.D. 68, 73–74 (S.D.N.Y. 2020) (party controlled documents its affiliates regularly provided). If VGB lacks responsive documents, it need only say so. Joint Ltr. at 6.

Third, VGB's structure, not a general rule, warrants the discovery. A secondary-market purchaser "do[es]n't actually know who held it before you." Tr. 22:4–7. VGB received most of its Bonds from its parent fund's own investors, Joint Ltr. at 1, and knows, or can readily determine, who they were and what it learned about them. No bondholder would need to prove its pedigree.

## CONCLUSION

For the foregoing reasons, VGB should be required to produce documents in its possession, custody, or control regarding the Bond transactions, the counterparties' identities, sanctions screening, and communications with OFAC.

Dated: New York, New York
November 6, 2026

Respectfully submitted,
*/s/ Hal S. Shaftel*
Hal S. Shaftel

GREENBERG TRAURIG, LLP
One Vanderbilt Avenue

New York, NY 10017
*Counsel for Defendant the Bolivarian Republic of Venezuela*

**LOCAL RULE 7.1(c) CERTIFICATION**

I, Hal S. Shaftel, an attorney duly admitted to practice before this Court, hereby certify that this Objection to the Magistrate Judge's October 22, 2026, Ruling Denying Bond Ownership-Related Discovery complies with the word limit set forth in Local Rule 7.1(c) and in Your Honor's Individual Practices in Civil Cases Rule III.D, as it contains 6997 words, excluding those items permitted for exclusion under this Local Rule. In preparing this certification, I have relied on the word count of the word-processing system used to prepare this objection.

*/s/ Hal S. Shaftel*

Hal S. Shaftel